Weldon, J.,
delivered the opinion of the court:
The brig Amiable Matilda, Brown, master, sailed on a commercial voyage on the 2d day of September, 1797, from Philadelphia, bound for Bilboa, Spain. While pursuing said voyage the vessel arrived between St. Ogne and Bilboa at about 8 o’clock in the morning on the 8th of October, and took a pilot to conduct her into the port of Bilboa. About noon of the same day the French privateer Hardy, of Bayonne, Captain Sarrouble, came from the shore with sails and oars and fired upon her, whereupon the master of said vessel hoisted the colors of the United States and lay to in order to learn what was wanted of him. The privateer then fired again, and boarded the vessel with twelve or fourteen armed men under the command of Captain Sarrouble, who demanded of the master the ship’s papers. Thereupon the master delivered to him his role d’équipage and some other papers. Upon being asked by the captain of the'privateer if he had other papers, the captain of the ship replied that he had, and was ordered to produce them; thereupon he *144 went below to look for them. On his return he found that his róle d’équipage, that had been given by him to the captain of the privateer, had disappeared. Upon asking the captain of the privateer what had become of the role d’équipage he denied having received it, and upon Captain Brown insisting he had delivered it,- he Captain Sarrouble, replied with insult and ill treatment. Captain Sarrouble then took possession of the Amiable Matilda for the want of the róle d’équipage, took from the master his spyglass, his crew under his orders,' removed various articles, such as salt, provision, light sails and sailcloth, and ’ conducted the ship to St. Juan de Luz, where she was detained several days, exposed to plunder, and her master denied communication with all other persons. The ship was then,carried to. Bayonne with her American flag-upside down, in which position it had been hoisted by Captain Sarrouble at the time of her seizure and had so remained until her arrival at Bayonne. At the time of her seizure the Amiable Matilda carried her róle d’équipage, passport, charter party, bill of lading, and register.
After the capture of the vessel proceedings were had before the civil tribunal at Bayonne, and by the judgment of said tribunal the vessel and cargo were released, no appeal being-taken by the privateer. It is stated in the observations of the court that “the privateer who captured her secreted her róle d’équipage.” After said proceedings, to wit, January 27, 1798, on the payment of the sum of 115,792.05 livres to the captain of the Hard}? by the captured party, the said vessel and cargo were released to the owners.
In the argument of the case there was spirited contention between counsel representing the parties as to whether the payment of the said sum of money was before or after the rendition of the decree. It was the contention of counsel for the claimant that the payment of said sum was by the way of forced compromise before any proceedings in the civil tribunal, and that such proceedings were resorted to only for the purpose of relieving the ship and its cargo from taint of suspicion and subsequent responsibility. The counsel for the defendants contends that the compromise and payment were subsequent to the decree. The court has given in the findings of fact the record upon which the contention of the parties is *145 based, and, giving that record its reasonable and logical force, the court determines that the probability is that the compromise in which the payment was made took place subsequently to the rendition of the decree of the court, and that the object which induced the compromise upon that basis was to relieve the captured party from the dangers of an appeal which might have been taken by the officers of the privateer.
In the general view which the court has taken in this case it was the du£y of the captured to avail themselves of all practical means of judicial redress. It is therefore immaterial whether the compromise was made before or after the rendition of the decree of the French tribunal. It was insisted that the compromise was the result of duress. The circumstances of the transaction do not indicate that degree of duress which would justify the compromise and payment. As a general rule the captured party is always more or less embarrassed by distressful, circumstances and acts not amounting to what the law deems duress.
It being the inference of the court that the compromise was after the decree, from the construction which the court has given the record, it presents the question as to whether the claimants could thereafter successfully complain against France, not having relied on the decree, but.placing their compromise upon an expediency which relieved them from the dangers of further litigation.
It has been held by this court in the case of The Schooner Dolphin (27 C. Cls. R., 276), in substance, that where it appears in the case of recapture that the owners appealed from the decree of a court of admiralty awarding salvage, but does not appear what was the result of the appeal, the burden of proof is upon the claimants to establish the fact and extent of their loss. The appeal took the vessel out of the operation of the decree.
In the case of The Ship Tom (29 C. Cls. R., 71), it is in' substance decided: Where a right to restitution existed, the owners were bound to assert it and to appeal from an adverse decision if an appellate court was within their reach; and the burden of proof is on the claimant to show that the owners did so. The United States are not liable where a claimant *146 having a substantial right of appeal, at the time of the signature of the treaty, neglected to' prosecute it; in France a substantial redress by appeal existed; in the West Indies there was in most cases no remedy.
The French court having decided the right of the case in favor of the captured parties, it was their duty to stand by that decision if they intended to hold the sovereign of the captors responsible for the seizure. France had done its duty in the rendition of a judgment of release through the medium of its courts, and could not thereafter be put in the wrong by failure of the captured party to stand by the decree of the court.
If it is the duty of the captured to avail themselves of all the practicable means of enforcing their rights by judicial process, it is none the less their duty to avail themselves of all the advantages which they may have gained in the judicial proceedings incident to the seizure of their property.
The payment of the consideration of the compromise, while it relieved them from the danger and expense of an appeal by the captors, released France from all responsibility because of the seizure, and, the defendants’ rights in this proceeding-being the same as those of France, no liability attaches to the United States under the treaty of 1800, and the law of our jurisdiction.
As is said in the Tom case (supra), the United States are not liable where a claimant having a substantial right of appeal neglected to prosecute. Applying that principle to the facts of this case, what is the effect? In this case the claimants had a judgment of the French court in their favor; and if it was their duty amid the circumstances of the case to take an appeal in case the judgment was against them, how much more was it their duty to abide by and defend the judgment of the court where it was in their favor. In legal effect they paid the captors the amount of the compromise in violation of the decree of the court, and by such payment released the claim against France.
No allowance is made, and a copy of the findings and the opinion of the court will be certified to Congress.
Nott, Ch. J., did not sit at the hearing or take part in the decision of this case.